OPINION
Defendant-appellant Monty Scott Hare appeals his conviction and sentence from the Delaware County Court of Common Pleas on one count of domestic violence in violation of R.C. 2919.25(A), a felony of the fifth degree. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
On October 1, 1999, the Delaware County Grand Jury indicted appellant on one count of domestic violence in violation of R.C. 2919.25(A), a felony of the fifth degree. The indictment alleged that appellant previously had been convicted of domestic violence in Delaware Municipal Court Case No. 93CRB01208. At his arraignment on October 5, 1999, appellant entered a plea of not guilty to the charge contained in the indictment. Thereafter, a jury trial commenced on November 18, 1999. The following evidence was adduced at trial. Late on September 3, 1999/early on September 4, 1999, Officer Andrew Burns of the Village of Ashley Police Department responded to a domestic violence call at an apartment complex located in Ashley, Ohio. Goldy Young, whose apartment is adjacent to Apt. #12, had called the police after a "big thump" on the wall of her apartment woke her from a sound sleep. Transcript of Proceedings at 90. At trial, Young testified that she heard the thumping noise "quite a lot of times." Transcript of Proceedings at 93. As Officer Burns approached Apt. #12, he could hear screaming coming from inside the apartment. When he stood in front of the apartment's open window, Officer Burns could see a male inside screaming and yelling. Officer Burns then knocked on the front door of the apartment a couple of times. Although the screaming in the apartment stopped, there was no answer at the front door. Thereafter, Officer Burns went back to the apartment window and made contact with appellant. Appellant subsequently opened the apartment front door, but refused to permit Officer Burns to enter the apartment. At trial, Officer Burns testified that appellant "told me that he had been drinking that night, told me he was on parole, and that he was in violation of parole for drinking and that he was sorry, but still wouldn't let me in." Transcript of Proceedings at 18-19. After the officer told appellant that he had received a call that someone inside was injured, appellant became very apologetic and let Officer Burns enter the apartment. When the officer entered the apartment, appellant told the officer that he was alone. Officer Burns testified that appellant smelled of alcohol and had blood on his shoes and hands. After Officer Burns began walking down a hallway in the apartment, appellant tried to block his way, telling the officer that he had "no business being there" and that it was someone else's apartment. Transcript of Proceedings at 20-21. Upon entering a bedroom, Officer Burns found Michelle Spry, appellant's girlfriend, lying in a fetal position on the floor with blood coming out of her nose and mouth. Spry's lips were swollen, her nose was bleeding and swollen and one eye was swollen shut. In addition, blood was splattered on the walls, the bed sheets, the bed and on the floor of the room. As Officer Burns picked up the telephone in the bedroom to call for medical assistance, appellant ran out of the bedroom, through the living room and out onto the front porch, where he was apprehended by the officer. Since appellant was still attempting to escape, Officer Burns handcuffed him and then led him back into the bedroom. Later, at the emergency room, Spry told the doctor that she had been assaulted by her boyfriend. Appellant subsequently was charged with domestic violence. At trial, Doug Missman, a probation officer, testified that he had supervised appellant on probation for a domestic violence conviction in the Delaware Municipal Court in 1993. At the conclusion of the testimony and the end of deliberations, the jury, on November 19, 1999, returned with a verdict finding appellant guilty of domestic violence in violation of R.C. 2919.25(A). The jury also found that appellant previously had been convicted of domestic violence. Thereafter, on December 20, 1999, appellant was sentenced to a prison term of twelve months with credit for time served. A Judgment Entry of Sentence was filed the same day. It is from his conviction and sentence that appellant now prosecutes his appeal, raising the following assignments of error:
 I. THE TRIAL COURT ERRED BY EXPANDING THE STANDARD JURY INSTRUCTION FOR A DOMESTIC VIOLENCE CHARGE ON FAMILY AND FINANCIAL RESPONSIBILITY AND ON CONSORTIUM.
 II. THE TRIAL COURT ERRED BY INSTRUCTING THE JURY IT COULD CONSIDER FLIGHT EVIDENCE AS INCICIA (SIC) OF GUILT.
 I
Appellant, in his first assignment of error, argues that the trial court improperly instructed the jury on the definitions of "family or financial responsibility" and "consortium". We, however, disagree. As is stated above, appellant in the case sub judice was charged with one count of domestic violence in violation of R.C. 2919.25(A). Such section states as follows: "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." "Family or household member" is defined in R.C. 2919.25(E)(1)(a)(i) as including a "person living as a spouse" provided such person is residing or has resided with the offender. "A person living as a spouse" is further defined as "a person who is living or has lived with the offender in a common law marital relationship, who otherwise is cohabiting with the offender, or who otherwise has cohabited with the offender within five years prior to the date of the alleged commission of the act in question." R.C.2919.25(E)(2). During the trial in this matter, appellant had requested that the trial court give the following jury instructions taken from 4 OJI 519.25: "Cohabit" means (1) the sharing of family or financial responsibilities and (2) consortium. "Family or financial responsibilities may include providing shelter, food, clothing, utilities and commingling assets. "Consortium" may include mutual respect, fidelity, affection, society, cooperation, solace, aid to each other, friendship and sexual relations. These instructions are drawn from State v. Williams (1997), 79 Ohio St.3d 459. However, the trial court, over appellant's objection, gave the following instructions: Cohabit means, one, the sharing of family or financial responsibility; and, two, consortium. Family or financial responsibilities may include, but are not limited to providing shelter, food, clothing, utilities, and commingling assets. Consortium may include, but is not limited to mutual respect, fidelity, affection, society, cooperation, solace, aid to each other, friendship and sexual relations. (Emphasis added.)
Transcript of Proceedings at 159-160. Appellant now contends that the trial court, by adding the phrase "may include, but are/is not limited to" to the definitions of "family or financial responsibility" and "consortium", impermissibly broadened the scope of the domestic relations statute. The Ohio Supreme Court, in Williams, supra., held that "[p]ossible factors establishing shared familial or financial responsibilities might include provisions for shelter, food, clothing, utilities, and/or commingled assets." Id at 465. (Emphasis added). The court further held that "[f]actors that might establish consortium include mutual respect, fidelity, affection, society, cooperation, solace, comfort, aid of each other, friendship and conjugal relations." Id. (Emphasis added). As noted by the court in Williams, "[t]hese factors are unique to each case and how much weight, if any, to give to each of these factors must be decided on a case-by-case basis by the trier of fact." Id. While appellant argues that the trial court impermissibly expanded the scope of the domestic violence statute by adding the phrase "may include, but are/is not limited to" to the definitions of "family or financial responsibility" and "consortium", we do not concur. As noted by the court in State v. Young (Nov. 20, 1998), Montgomery App. No. 16895, unreported, the Ohio Supreme Court, in Williams, emphasized that the listed factors were "possible factors establishing shared familial or financial responsibilities" and factors that might establish consortium. Williams, supra. at 465. Clearly, based on such language, factors other than those listed in Williams could be relevant to prove cohabitation. We find, therefore, that the trial court did not err in adding the phrase "may include, but are/is not limited to" to the definitions of "family or financial responsibilities" and "consortium." As noted by appellee in its brief, "[i]t can hardly be believed that these few words altered the definition in such an expansive way as to allow the jury to reach any conclusion they chose to." Appellant's first assignment of error is, therefore, overruled.
 II
Appellant, in his second assignment of error, contends that the trial court erred in instructing the jury on flight. During the trial in this matter, the trial court, over appellant's objection, gave the following instruction on flight to the jury: "If you find that the defendant fled from a police officer, you may infer but are not required to infer, a consciousness of guilt. Whether or not evidence of flight shows a consciousness of guilt and a significance to be attached to any such evidence are matters exclusively within the province of the jury." Transcript of Proceedings at 156. Appellant now argues that there was insufficient evidence supporting such an instruction. At the trial in this matter, Officer Burns testified, in part, as follows: . . . There was a phone on the night stand right next to the bed. I picked that up to call directly on a land line. At that point, I couldn't get through and I noticed Mr. Hare [appellant] running out of the bedroom. I put the phone down and pursued him through the house. He ran through the living room and onto the front porch before I was able to apprehend him. Q. And what did you do after you got to the front porch? A. After he got to the front porch, I was able to get ahold of him by the sweat shirt he had just put on and position him on the ground where I could handcuff him. I took him back into the apartment, because at that point, dispatch still didn't know that I was requesting a Medic Unit. Q. Than what happened? A. I took Mr. Hare back into the bedroom where my radio was and where I knew there was a phone and was able to call to get medics and a backup unit to the apartment. Q. What did you do with the defendant? A. I kept him with me. Again, my radio was in the room and I knew that I had to get medics for Michelle Spry and at the same time had to keep Mr. Hare in my presence.
Transcript of Proceedings at 23. Accordingly, because, based on Officer Burns' testimony, there was some evidence presented as to flight, we find that the trial court did not err in giving a flight instruction. See State v. Edwards (May 17, 1999), Stark App. No. 1998CA00170, unreported.
Appellant's second assignment of error is, therefore, overruled.
The judgment of the Delaware County Court of Common Pleas is affirmed.
Edwards, J. Farmer, P.J. and Reader, V.J. concurs